Good morning and welcome to the Ninth Circuit. Judge Bea and I would like to welcome Judge Fitzgerald, who is joining us from the Central District of California. Welcome and thank you. Thank you for the invitation. Today we have a number of cases that we will hear oral argument on one case and have a number of cases that are submitted. The cases that are submitted are Ronald Tolentino v. Gillig, LLC. That matter is submitted. Wendy Luft v. Martin O'Malley. That matter is submitted. United States v. William Weiss. That matter is submitted. George Kleinman v. Wells Fargo. That matter is submitted. And Edward Fogg v. Saline Finance, LP. That matter is submitted. And today we do have argument on Just Goods, Inc. v. Eat Just, Inc. And so, counsel, when you are ready. Good morning. Good morning, Your Honor. May it please the Court, my name is Phillip Wong and I represent appellants Eat Just, Inc. and Joshua Tetrick. I'd like to reserve three minutes for rebuttal, please. Very well and pay attention to the clock. Yes, Your Honor. My client's mission is to make plant-based alternatives to household food products, such as egg and mayonnaise. Our flagship product is Just Egg, and the question about how we can refer to Just Egg is at the heart of today's appeal. The term she was entered into in 2019 during a mandatory settlement conference with the hope that a more robust settlement agreement would follow. Eat Just paid millions of dollars in the hopes of buying peace to move on with its business, and the use of Just Egg was at the heart of that peace. We reasonably interpreted the plain language of the term sheet to give us the right to use Just Egg in text. Counsel, so that I understand it, can you just please explain what's ambiguous about paragraph 2, if any, that supports your position of the use Just Eggs with the capitalized Just in text? Yes, Your Honor. We submit that paragraph 2 is not ambiguous, rather that it's fairly clear, that when it refers to, it says, Just Inc. may refer in text to its brand as All Caps Just, so long as All Caps Just is used in connection with our product name. So All Caps Just is written in there as allowed, and so when it says with the product name, it's agnostic as to whether or not Egg is also All Caps or Initial Caps, as we tend to use it. But isn't the parentheses that follow not in All Caps? Correct. The parentheses is not in All Caps, but Aren't those examples of what's allowed and not allowed? Sure. It is an example, but it is that we believe that the examples are meant to illustrate used in connection with the product. So if you see the changes within the examples, Just Mayo, Just Egg, Just Cookie Dough, the changes in there are referring to the different products. It's not meant to be exclusive as to capitalization structure. It wouldn't make sense otherwise, because just before, excuse the pun, none intended, but just before, the Just in two situations is in All Caps, so we don't believe that the is meant to be exhaustive of permissible capitalization structure. An interesting thing that I thought when I was reading the briefing was this, that there was a complaint that was filed in 2020, and it's part of the complaint, in fact, it's part of the screenshots, it wasn't referred to in the complaint, but the word Just Capitalized with Eggs afterwards, that was in the original complaint, but it wasn't being complained about there, but it's being complained about now. So would you say or would you agree then that they've waived that issue at this point? Yes, we agree that they waived the issue. I'm not familiar with the complaint Your Honor is talking about, but at least as to the motions to enforce filed in 2020, and there were two of them, examples of Just with the initial All Caps Just, initial caps Eggs, was replete within their filings. We counted at least 75 instances of that capitalization structure, and they did not challenge it. And to add to that, Your Honor, in the record, specifically in ER 267 to 274, you'll see that these issues were extensively litigated. Examples of our violations were, you know, JGI presented many, many, many examples, and they were litigating everything that they could find, but Just Egg was not, was conspicuously not litigated. And therefore, and the first time they brought it up in court was in 2023, and so yes, we do believe they've waived it, and the district court completely ignored this issue. But yes, we agree, absolutely, we believe they have waived that argument. But to the, let me ask you about that. Let's say that we agree with you that the post-filing examples that are being offered wouldn't be granted and that the motion to expand the record would be denied. The issue was it was raised before the district court. The district court certainly could have, must, presumably was considering that before having the contempt sanction. That, are you saying then that since it was completely ignored that there's no deference to what happened below, or that, what exactly then are you saying should be the review on that, since you're, just so I understand it, you're saying it was completely ignored, and therefore there's no deference owed to, in that regard, on those issues to what happened in the district court, despite the district court being very well-versed, obviously, in this dispute? Your Honor, I wouldn't say that there's no deference. We just, we, I think we, the parties agree that abuse of discretion is the standard. That said, because there was no finding of fact, there was no finding below either as to law or fact as to waiver, you know, even in a, on an abuse of discretion standard, the Court should review it, you know, almost anew because there's no record. And, but that's, that being said, I think, based on the undisputed facts, this Court can nonetheless either find waiver on its own or remand with the finding instructing the district court to find waiver. And the undisputed facts are these. They knew we were using Just A. We referenced at least 75 references. And the specific reference, you know, Your Honor just pointed out that the red box Just, and right above it is Just A, which they did not challenge. Second, there's no dispute that we raised the waiver argument below. And third, it's undisputed that the district court did not address the waiver argument. And fourth, JGI considered the waiver argument only as to the text, correct? I mean, you don't get around, I mean, how do you get around the social media alleged violation that you used, that you used it in the social media handle? How do you get around that given what the term sheet says? Sure. What I'm, what I mean in waiver, I only mean the selective capitalization and the trademark issue. As to text, correct? As to text, but not the, not the social media. As to the social media handle, Your Honor, we believe that in paragraphs 3 and 15, there's a reference to the new company name, which is meant, we believe, to be flexible. And it was not meant to be exhaustive as to the only social media handles that we could ever use. And because, you know, JGI has made the argument that, well, company name, the company name must be Eat Just, Inc. That's also talked about in paragraph 5. I'm looking at paragraph 3. I don't see what language specifically do you say says that. Yes. I'm sorry. I'm referencing paragraph 15, Your Honor. Oh, not 3. You said 3 and 15. So not 3? Correct. Okay. 15. 15 says defendants shall change all social media handles on online platforms to the new company name. That's the new company name I'm referencing. Other places in this term she referred to a new corporate name. In paragraph 5 says corporate name shall be Eat Just, Inc. We believe that there's a deliberate, there's a reason why the words are different and that it ought to mean different things. Do you want to save the remaining time? Yes, I would like to save the remaining time, Your Honor. All right. Good morning. Jill Petrini for Plaintiff Just Goods and Appellee. Our position is a district court should be affirmed in all respects. It's consistent with your 2022 decision. It is consistent with the two orders of enforcement of the term sheet and contempt thereof that the district court, which under, which grounded your 2022 decision, the defendants have failed to meet their heavy burden of waiver. It's by a clear and convincing standard. And there has not been an intentional relinquishment of our right to object to this new variation of just. They continue to emphasize the word just. And the fact that we didn't point out every single one that they do doesn't mean that we completely gave up our right to ever object. Why not? Because we can't determine everything that they've done. We had one example, and it was one example only.  In your complaint, in the not complaint. In the motion. In the motion. In the motion. Excuse me. Yeah. In the motion. In the contempt motion. You indicated in that, you indicated the other violations. But in that you can actually see in the screenshot itself. Right. Quoted just eggs with eggs being lower case except for the E being lower case and used in connection with one another. Why isn't their argument correct that you've waived it because you knew about it as early as 2020 and you did nothing about that until the latest filing? Well, back up for a second. Remember, there was an email from me March of 2021. We've asked to supplement the record that you consider it because one thing that. It wasn't part of the original record, correct? Right. But neither was the 75 uses that they've just identified to you. They were not. And they've now. They brought that up on the motion to stay. Look, I understand how frustrating you are. Frustrated you are. There appears to be several violations and it's hard to just keep them all straight. But in this instance, though, why isn't it fair for them to say, hey, you know, you knew about it from the very beginning and you just didn't, you know, you didn't bring it up. One single use that we did not identify should not be a complete waiver of our rights. And it's an abusive discretion standard to review the district court. The district court did consider a waiver. He certainly did. And he made that clear when he talked in his order denying the motion to stay. So that is that one issue. And it's very small. It's at the bottom of the screenshot. I know what you're referring to. And the other uses are third-party uses. It's at ER 385. Right, right. I think it was in Mr. Boss' declaration when it was screenshotted. And then, but they didn't, it was small. We shouldn't be forever barred from doing that. And this is just going to continue, by the way, the emphasis on just. And I don't want to be back here a third time, but I'm kind of feeling I will be, or Mr. Boss will be, as I age out, you know. So there's that. So I really don't think there's waiver. The justification for using just in capital letters that you just heard, it's just wrong under paragraph 2. The use of just in capital letters in paragraph 2 was to refer to it as a trademark use, because the word just is a common word. And so the capitalization throughout the binding term sheet was to indicate when things were used as a trademark. As opposed to when referring to its brand in the initial caps, just egg, is that is a brand, just egg. It's not descriptive use of, oh, it's a product containing only eggs, which it doesn't because this is not a product. So that was the intent of that. It doesn't, that doesn't justify the use of the word just in capital letters like they're doing now. And certainly the waiver, and you touched upon it, the waiver, going back to that for one second, the waiver cannot apply to the use of just egg as taking over the overall brand of the company. And for now, being social media, they knew exactly what social media handles they could use, and they've gone beyond that. They really don't have any basis for that. Well, they pointed to paragraph 15. I guess I didn't understand that argument. They pointed to paragraph 15. How do you understand that argument? I kind of don't because the company name, the new company name is synonymous with the new corporate name. In fact, paragraph 15 uses both, and it uses both to refer to the same concept. The whole concept was you're going to change your company name. It was just ink, and you need to pick which one. It's going to be make it just or it's going to be eat just. And that was the, and they were undecided at the settlement conference of which one they were going to go with. Ultimately, they decided we're going with eat just. So 15 is a reference to the decision of which one you were going to go with, or maybe it was going to be something totally different. That's all that was. It's not saying that somehow that's any company name that they can come up with. If that were the case, that would completely nullify paragraph 5. It says you have to change your corporate name to eat just ink within so many days. If they can now come up with any product name or anything else to use as their company name, whether they formally change the articles of incorporation or not, then that just wipes out the whole purpose of the agreement. You can't emphasize just. We're just. They got just plus another word, and they could only use just plus another word in a particular format, and you nailed it. It's with initial caps, and that's in text. When they were putting on their products, they had the composite just frame logo. That's what they could use. And by the way, they raised that issue, the justification of using just in capital letters before the Ninth Circuit in the briefing that led to the 2022 decision, and it was rejected. So the Ninth Circuit has already considered that, and it's gone. I can give you the — it was — they raised it. It was docket 13 at pages 27 through 28 in the briefing underlying the 2022 decision. So that — you really shouldn't consider that argument at all. The other thing — I've got a few minutes left here. The registration of eat just and just egg was never contemplated. The only thing they could register was the frame logo and the permitted marks in the frame logo and make it just. Make it just was the only word mark that they were allowed to register, and there's a big difference between a word mark and a design mark. And that's — and that was done with the purpose of distinguishing the parties products and companies because that — it was a trademark dispute. That's what we were in a fight with. But a word — to be allowed to use a trademark is very different than to be allowed to register a trademark. One is common law and one is federal rights. So that was a negotiated point that you were not going to be able to register a word mark because the rights afforded by a registration to a word mark are much broader than to a design mark. And that's the way it was written. And it's clear from — I think it's paragraph 12, and we're — it was using defined terms, permitted mark. The argument that somehow permitted marks include the word just egg is just fiction, just egg, word mark. The permitted marks were defined as the certain product names, just scrambled, just cookies, just egg, in that frame logo format. That was the definition. So you can't extrapolate that and say, oh, I have a right to register the word mark. It's just not — not true. I think the last point I'd like to go over, unless you have any other questions, is a per diem fine. It was appropriate by the district court. This is Round 2 with the Ninth Circuit. They continue to breach the term sheet. I guess they don't like the deal that they made, but that's unfortunate. That's the deal you made. And that ended the litigation. It allowed them to use variations of just as a composite mark. Had they lost at the district court, they would have had no use. So we're going to continue to be here if there's not so much pain financially that that stops them. The award of attorney's fees is just a cost of doing business for the defendants. They don't care. And the per diem fine continues to run. It wasn't bonded. It's just accruing as we go. So apparently the per diem fine is another cost of doing business. We would like to have the benefit of our deal. And what it seems like to us as a plaintiff is that the onus has been put on the plaintiff to make sure the defendants comply with the term sheet. They knew that the capitalization of just was an issue for the district court. They have orders that say you cannot capitalize just in the corporate name. You can't capitalize just and make it just. So they're just going to continue to test the fence on this. And it's not our job to police them. It is our job to enjoy the benefit of the contract. It's their job to ensure compliance with it. With that, I have, I think, nine seconds left. Any additional questions? No. Any questions? Thank you, Counsel. Thank you. Your Honor, just a couple of points. We would also like the deal we made. The deal we made was the ability to use Just Egg the way it is in the term sheet and in the logo and reliance upon their not pursuing Just Egg. In Your Honor reference ER-385, there's another reference I think is even more stark, which is ER-376, where the JGI circles Just, which they are challenging in their brief, and right above it is Just Egg. And I think that example is very — clearly illustrates that we were allowed to use Just Egg in the agreement. And even if the Court finds that it's ambiguous or vague, they have waived the issue. All right. And, Counsel, let me ask in regard to the waiver where the argument was just made that the district court considered that in the order to stay. I take it your position is that that's something that should not be considered by this Court. I agree. The Court should not consider it because it was not outside the scope of what the district court considered in the order that we are appealing. Well, considered necessarily, Roe. But I just want to make sure that I understand your argument in that regard. Yes. Well, what about their other argument? And there's something sort of real about it, which is, in their view, there's all of these violations. There's this. There's that. There's all of these things. How are they supposed to be policing all of the different things when, in their view, there continues to be a number of violations? I'm glad you brought that up, Your Honor. Certainly, I understand the position that if there's – they're not – they should not be counted on to exhaustively bring up every issue. But this issue was replete in the things that even they submitted into the Court. So they knew, they saw, but did not challenge. And that's the main difference, Your Honor. So you agree that it's not necessarily their onus to just go after every single little thing. Maybe if they didn't know about it is your position, correct? Sure. Exactly. But they did. And even if they claim they didn't, they ought to be charged with knowing because it was everywhere. The use of just say was everywhere within even their submission.  So they can't say. Your time seems to be up. Are there any additional questions? There are not for me. No questions. Very well. Thank you so much for your presentation to both of you. I appreciate it. But with that, we will be in recess. Thank you very much. All rise.
judges: BEA, MENDOZA, Fitzgerald